UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
UNITED STATES OF AMERICA     :
                             :
v.                           :    NO. 3:06CR0059(AWT)
                             :
SHAMAR A. THORNTON           :
                             :
-----------------------------x
```

RULING ON DEFENDANT'S MOTION
TO SUPPRESS AND DEFENDANT'S REQUEST FOR A HEARING

For the reasons set forth below, defendant Shamar A. Thorton's Motion to Suppress (Doc. No. 13) and his Motion for a Hearing (Doc. No. 14) are being denied.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On or about October 5, 2005, the Hartford DEA Task Force received information from a confidential informant regarding an individual believed to be engaged in the sale and distribution of crack cocaine in the Bowles Park area of Hartford.  The confidential informant provided a physical description of the suspect and a description of his vehicle.  On October 5, 2005, an individual who matched the physical description provided by the confidential informant was observed by the investigating agents entering 251 Nahum Drive and exiting a few minutes later.  The subject, later identified as defendant Shamar A. Thornton was then observed entering the vehicle described by the confidential informant and driving away from 251 Nahum Drive.  The investigating agents observed the vehicle roll through a stop

sign and fail to signal when turning.  While the defendant was
stopped in traffic, he appeared to notice the investigating
agents' unmarked vehicles, and he was observed checking his
mirrors and looking around as if looking for an escape route.
When the defendant put his vehicle in reverse, the investigating
agents approached the vehicle.  The defendant appeared to panic,
and Task Force Agent Burgos observed the defendant stuff
something down the back of his pants.  The defendant was removed
from the vehicle and handcuffed.

Task Force Agent Plourde, a certified K-9 handler, directed
his K-9 to sniff the defendant's vehicle and person.  The K-9
alerted on the defendant's buttocks area.  As Burgos was about to
conduct a pat down of the defendant's person, the defendant
stated that he had stuffed a small amount of crack cocaine down
his pants and that he was sorry.  As a crowd began to assemble in
the area, the investigating agents decided to transport the
defendant to a parking lot approximately one block away. Burgos
subsequently located and seized from the defendant's person a
plastic bag containing 25 knotted plastic bags, each of which
contained a white rock-like substance.  A field test confirmed
the presence of cocaine.

Plourde and other investigating agents then proceeded to 251
Nahum Drive, Apartment 1A, where they met Marquila Alexander, the
defendant's girlfriend.  Alexander confirmed that she lived in

- 2 -

the apartment with the defendant.  Alexander provided written consent to search the apartment.  In a bedroom dresser drawer containing male underwear and documents and letters belonging to the defendant, the investigating agents found a Rossi .38 caliber revolver.  In addition, a substance that later field tested positive for cocaine and .38 caliber ammunition were seized from a safe located inside a bedroom closet.

The defendant was transported to the DEA's Hartford field office, where he was advised of his <u>Miranda</u> rights.  He waived his rights and provided a written statement in which he admitted ownership and possession of the crack cocaine, as well as the ammunition and the firearm found at his residence.

On February 28, 2006, the defendant was arrested and charged by criminal complaint with Possession of a Firearm by a Convicted Felon.  On March 8, 2006, a Grand Jury sitting in Bridgeport returned a three-count indictment charging the defendant with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1), Possession with Intent to Distribute 5 or More Grams of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 21 U.S.C. § 924(c)(1)(A).

The defendant has moved to suppress (i) the controlled substances seized from his person; (ii) his statement to

- 3 -

investigating agents that he stuffed a small amount of crack cocaine down his pants; (iii) objects seized by investigating agents from 251 Nahum Drive, Apartment 1A; and (iv) his oral and written statements made at the DEA's Hartford field office.

## II.   <u>ARGUMENT</u>

### A.   <u>Request for Evidentiary Hearing</u>

It is well settled in the Second Circuit that a defendant seeking to suppress evidence bears the burden of demonstrating that there are disputed issues of fact that would justify an evidentiary hearing. <u>United States v. Culotta</u>, 413 F.2d 1343, 1345 (2d Cir. 1969); <u>United States v. Gillette</u>, 383 F.2d 843, 848-49 (2d Cir. 1967).  A defendant's burden is not satisfied by "conclusory, non-particularized allegations of unlawful official behavior." <u>United States v. Tracy</u>, 758 F. Supp. 816, 820 (D. Conn. 1991).  Rather, the showing required to justify a hearing must be made by an affidavit of someone with personal knowledge of the underlying facts; a defense attorney's declarations are insufficient. <u>Gillette</u>, 383 F.2d at 848-49 (affidavit by defense attorney in support of motion not based on attorney's personal knowledge was insufficient to create factual issues required to be resolved at an evidentiary hearing); <u>Shaw</u>, 260 F. Supp.2d at 570 (same); <u>United States v. Caruso</u>, 684 F. Supp. 84, 87 (S.D.N.Y. 1988)(same).

- 4 -

> Experience shows that unless such serious charges are
> initiated upon the sworn statement of persons having
> personal knowledge of the facts, a great deal of time of
> the parties and the Court is frequently wasted upon
> unnecessary, expensive and protracted suppression
> hearings, all for the reason that the attorney demanding
> suppression merely upon his own say-so often discovers
> only at the hearing that he had been misled by unsworn
> misrepresentations of his clients, which they would be
> unwilling to swear to in an affidavit, particularly if
> they were questioned closely by their counsel and warned
> of the consequences of perjury.

United States v. Garcia, 272 F. Supp. 286, 290 (S.D.N.Y. 1976).

A motion to suppress not supported by an affidavit by someone

with personal knowledge of the facts may be properly denied

without a hearing.   United States v. Ruggiero, 824 F. Supp. 379,

393-94 (S.D.N.Y 1993); United States v. Sierra-Garcia, 760 F.

Supp. 252, 264-65 (E.D.N.Y 1991).

Here, the defendant's motion is predicated entirely on the

unsworn assertions of his counsel.  The defendant argues that the

traffic stop was not lawful because he "did not roll through a

stop sign . . did not fail to signal while turning and he did not

place the car in reverse."  Mem. in Supp. of Def.'s Mot. to

Suppress (Doc. No. 13-2)("Def.'s Br."), 2.  The defendant argues

further that his statement at the scene of the traffic stop was a

product of custodial interrogation and offered without him having

received Miranda warnings. Id.  With respect to the search of 251

Nahum Drive, the defendant argues that he did not provide consent

and he "believes" that Marquila Alexander did not consent

voluntarily.  Id.  Lastly, the defendant argues that his

statement at the DEA's Hartford field office was involuntary, and given without him having received his <u>Miranda</u> warnings.  <u>Id.</u> The defendant submits no affidavit or other documentation in support of his motion.

The unsupported factual assertions of his counsel are insufficient to warrant an evidentiary hearing or justify the relief requested by the defendant.  Moreover, these unsworn assertions are disputed by statements in the Hartford Police Department incident report and in the sworn affidavit submitted in support of the Criminal Complaint.  <u>See</u> Government's Resp. to Def.'s Mot. To Suppress and Objection to Def.'s Req. for a Hr'g (Doc. No. 18) ("Government's Resp."), Ex. A; Compl., Borysevicz Aff. (Doc. No. 1).  By way of contrast, in the absence of a sworn statement by an affiant with personal knowledge, the defendant has no accountability for the assertions that his counsel has made.

The defendant argues that he should not be required to substantiate his claims with a sworn statement because he is at risk for an enhancement for obstruction of justice should he be convicted and the court concludes he proffered a false sworn statement.  The defendant provides no legal support for his request that the court convene an evidentiary hearing without him being required to show that there is a genuine dispute as to a material fact.  However, a key reason for requiring a sworn

affidavit is to make the defendant and any other witnesses accountable for their statements to the court.  The investigating agents have asserted the relevant facts in a police incident report and in a sworn affidavit.  The relevant case law requires the same of the defendant.  There is no reasonable basis here to excuse the defendant from satisfying the requirements for being given an evidentiary hearing.

    B.   <u>The Traffic Stop</u>

    The defendant argues that, contrary to the representations by the investigating agents, he did not violate traffic regulations. As discussed above, the defendant fails to make a showing that there is a genuine dispute as to this factual issue. Task Force Agents have represented that they observed the defendant roll through a stop sign and turn without first using a turn signal.  "The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." <u>United States v. Harrell</u>, 268 F.3d 141, 148 (2d. Cir. 2001) (quoting <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996)).  <u>See, e.g.,</u> Conn. Gen. Stat. §§14-242, 244 and 301.  Here, the records shows that the agents observed the defendant commit traffic violations.

    If a traffic stop is lawful, the driver and any passenger do not have a Fourth Amendment interest in not being ordered out of the stopped vehicle. <u>See Pennsylvania v. Mimms</u>, 434 U.S. 106

(1977) (once vehicle is lawfully stopped, ordering driver out of car is a *de minimis* intrusion and driver has no Fourth Amendment interest in not being ordered out of car); Maryland v. Wilson, 519 U.S. 408 (1997) (passengers in lawfully stopped car have no Fourth Amendment interest in not being ordered out of car). Once the defendant's vehicle was observed violating a traffic regulation, the agents were authorized to stop the vehicle, order the defendant to exit the vehicle and detain him for a reasonable period of time so that the agents could further their investigation.

Here, it appears that when the defendant detected the presence of the investigating agents, he put the vehicle in reverse and began to search for an escape route. As the agents converged on his car, the defendant was observed stuffing something down the back of his pants. Based on these observations, and considered in light of the fact that the defendant had been described by a reliable informant as a small time crack cocaine dealer, the agents had reasonable suspicion to extend the duration of the detention and investigate further. The Fourth Amendment permits law enforcement officers to initiate investigative stops when they have "reasonable suspicion, supported by articulable facts that criminal activity 'may be a foot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968); see also United States v.

Cortez, 449 U.S. 411, 417 ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). "[T]he level of suspicion required for a Terry stop is obviously less demanding than that for probable cause." Sokolow, 490 U.S. at 7 (citations omitted). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 273-274 (2002) (citations omitted).

In determining whether the information possessed by a law enforcement officer provided a sufficient basis for a stop, the court is required to look at the totality of the circumstances. Arvizu, 534 U.S. at 273; Alabama v. White, 496 U.S. 325, 330 (1990). "[T]he court must evaluate those circumstances 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" United States v. Colon, 250 F.3d 130, 134 (2d Cir. 2001) (quoting United States v. Bayless, 201 F.3d 16, 133 (2d Cir. 2000). The "totality of the circumstances" inquiry permits police officers to "make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Arvizu, at 273 (quotations omitted).

Here, the record shows that the traffic stop by the investigating agents was supported by reasonable suspicion, as was the extension of the duration of the detention and the further investigation.

C.   Search at 251 Nahum Drive.

The defendant argues that the search of the apartment he shared with Marquila Alexander at 251 Nahum Drive was conducted without consent.  He argues that he "believes" Alexander's consent was involuntary.  This is an equivocal and unsubstantiated assertion that cannot justify either an evidentiary hearing or suppression of the items seized from the apartment.  Also, the defendant's argument about fear of an enhancement for obstruction of justice should he be found guilty is not relevant here because an affidavit would be submitted by Alexander, not by the defendant.

In addition, Alexander's written consent to a search of the apartment flatly contradicts the defendant's unsupported assertion.  See Government's Resp., Ex. B.  On the consent form, Alexander represents that she was not "threatened, nor forced in any way" and that she "freely consent[s] to this search."  Id.

D.   Defendant's Statements During the Traffic Stop.

The defendant argues that he did not say to Burgos that he had stuffed a small amount of crack cocaine down his pants, and also that, in any event, he was not given Miranda warnings.  See

- 10 -

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  Both of the arguments by defense counsel are unsupported.

"Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody'."  <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the persons being questioned."  <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994).  "[A] custodial setting is one providing 'inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak.'"  <u>United States v. Mitchell</u>, 966 F.2d 92, 98 (2d Cir. 1992).

The record at this point demonstrates that the defendant's admission to possessing crack cocaine was not in response to a custodial interrogation.  As Burgos was conducting a pat down of the defendant's person, the defendant stated that he had stuffed a small amount of crack cocaine down his pants and that he was sorry.  Thus, the defendant's statement was not in response to any questioning by an investigating agent.  "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . Volunteered statements of any kind are not barred by the Fifth

Amendment and their admissibility is not affected by our holding today." *Miranda*, at 478.

> It is clear therefore that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.

Rhode Island v. Innis, 446 U.S. 291, 300 (1980). Therefore, even if the defendant was in custody for purpose of Miranda warnings, the record as it now stands shows that the statement offered by the defendant was not elicited during an interrogation.

    E.   Defendant's Post-Arrest Statement

    The defendant also argues that his oral and written statements to investigating agents following his arrest were involuntary and were not preceded by Miranda warnings.  This assertion by defense counsel is also unsupported.  The defendant argues that the investigating agents told him that by providing a statement, "he would save from a federal prosecution Marquila Alexander and also save her child from DCF custody proceedings." Def.'s Br. 2.  However, the defendant's written statement contains his representation that he provided the statement "voluntarily, without threat or promise made to me by anyone.  I have been read my rights and I understand them." Government's Resp., Ex. C.  In addition, the incident report states that Special Agent Borysevicz advised the defendant of his Miranda

- 12 -

rights from a preprinted card, that the defendant acknowledged that he understood his rights, and that this was witnessed by Plourde.  <u>See</u> Government's Resp., Ex. A at 4.  Based on the record, the court concludes that the defendant's post-arrest statement was voluntary and preceded by <u>Miranda</u> warnings.

## III. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Suppress (Doc. No. 13) and Defendant's Motion for a Hearing (Doc. No. 14) are hereby DENIED.

It is so ordered.

Dated this 16th day of November 2006 at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge
